No. 12-11735-D

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

BRUCE RICH,

*Plaintiff–Appellant,*

v.

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, *ET AL.*,

*Defendants–Appellees.*

On Appeal from the United States District Court
for the Northern District of Florida, Gainesville Division
No. 1:10-CV-00157-MP-GRJ – Hon. Maurice M. Paul

## APPELLANT'S MOTION FOR SUMMARY REVERSAL

Luke W. Goodrich
Eric C. Rassbach
*THE BECKET FUND FOR*
*RELIGIOUS LIBERTY*
*3000 K St., NW, Suite 220*
*Washington, DC 20007*
*T (202) 955-0095*
*F (202) 955-0090*

*Counsel for Bruce Rich*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Rich, Bruce: Plaintiff-Appellant;

2. Goodrich, Luke W.: The Becket Fund for Religious Liberty, counsel for Plaintiff-Appellant;

3. Rassbach, Eric C.: The Becket Fund for Religious Liberty, counsel for Plaintiff-Appellant;

4. Buss, Edwin G.: Defendant-Appellee, Secretary of Florida Department of Corrections;

5. McNeil, Walter: Defendant-Appellee, former Secretary of Florida Department of Corrections;

6. Hicks, Milton: Defendant-Appellee, former retired warden;

7.  Robinson, S.T.: Defendant-Appellee, former Assistant Warden of Programs;

8.  Andrews, Jeffrey: Defendant-Appellee, Food Service Director;

9.  Furman, Kathleen: Defendant-Appellee, Registered Dietician;

10. Deno, Julie: Defendant-Appellee, Food Service;

11. Taylor, Alex: Defendant-Appellee, Chaplaincy Services Administrator;

12. Thigpen, Albert: Defendant-Appellee, Food Service Administrator;

13. Bondi, Pam: Office of the Attorney General, counsel for Defendants-Appellees;

14. Stubbs, Joy A.: Office of the Attorney General, counsel for Defendants-Appellees;

15. Maher, Susan Adams: Office of the Attorney General, counsel for Defendants-Appellees;

16. Belitzky, Joe: Office of the Attorney General, counsel for Defendants-Appellees;

17. Paul, Maurice M.: Senior District Judge;

18. Jones, Gary R.: Magistrate Judge;

19. Nathan Lewin: Lewin & Lewin, LLP, counsel for *amici* The National Jewish Commission on Law and Public Affairs ("COLPA"); Agudas Harabbanium of the United States and Canada; Agudath Israel of America; the Union of Orthodox Jewish Congregations of America ("Orthodox Union"); National Council of Young Israel ("NCYI"); the Association of Kashrus Organizations ("AKO"); Rabbinical Alliance of America; and Rabbinical Council of America;

20. Alyza D. Lewin: Lewin & Lewin, LLP, counsel for *amici* COLPA; Agudas Harabbanium of the United States and Canada; Agudath Israel of America; Orthodox Union; NCYI; AKO; Rabbinical Alliance of America; and Rabbinical Council of America;

21. Dennis Rapps: National Jewish Commission on Law and Public Affairs, counsel for *amici* COLPA; Agudas Harabbanium of the United States and Canada; Agudath Israel of America; Orthodox Union; NCYI; AKO; Rabbinical Alliance of America; and Rabbinical Council of America;

22. Randall C. Marshall: ACLU Foundation of Florida, counsel for *amici* ACLU and ACLU of Florida;

23. Daniel Mach: ACLU Foundation, counsel for *amici* ACLU and ACLU of Florida;

24. David C. Fathi: ACLU Foundation, counsel for *amici* ACLU and ACLU of Florida;

25. Heather L. Weaver: ACLU Foundation, counsel for *amici* ACLU and ACLU of Florida;

26. Kimberlee Wood Colby: Christian Legal Society, counsel for *amici* Christian Legal Society; Prison Fellowship Ministries; and the National Association of Evangelicals;

27. Roger G. Brooks: Cravath, Swaine & Moore LLP, counsel for *amici* Christian Legal Society; Prison Fellowship Ministries; and the National Association of Evangelicals;

28. Carrie R. Bierman: Cravath, Swaine & Moore LLP, counsel for *amici* Christian Legal Society; Prison Fellowship Ministries; and the National Association of Evangelicals;

29. Joel C. Haims: Morrison & Foerster LLP, counsel for *amici* The Aleph Institute; International Society for Krishna Consciousness; the International Mission Board of the Southern Baptist Convention; and the Hindu American Foundation;

30. Michael J. Rosenberg: Morrison & Foerster LLP, counsel for *amici* The Aleph Institute; International Society for Krishna Consciousness; the International Mission Board of the Southern Baptist Convention; and the Hindu American Foundation;

31. Jeffrey M. David, Morrison & Foerster LLP, counsel for *amici* The Aleph Institute; International Society for Krishna Consciousness; the International Mission Board of the Southern Baptist Convention; and the Hindu American Foundation;

32. Michael S. Lazaroff: Cadwalader, Wickersham & Taft LLP, counsel for *amicus* American Jewish Committee;

33. Marc D. Stern: American Jewish Committee, counsel for *amicus* American Jewish Committee.

s/ Luke W. Goodrich

Luke W. Goodrich
  *THE BECKET FUND FOR*
  *RELIGIOUS LIBERTY*
  *3000 K St., NW, Suite 220*
  *Washington, DC  20007*
  *T (202) 955-0095*
  *F (202) 955-0090*

*Counsel for Bruce Rich*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT.........................................C-1

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND ....................................................................2

ARGUMENT ...........................................................................................6

    A.    The DOC's decision to adopt a kosher dietary program
           mandates summary reversal as a matter of law. ..........................6

    B.    The DOC cannot moot this appeal by announcing a
           kosher dietary program that it plans to introduce for
           some prisoners at some unknown date in the future. ...................8

CONCLUSION .......................................................................................14

CERTIFICATE OF SERVICE ................................................................15

EXHIBIT A – Declaration of Luke W. Goodrich ...................................A-1

EXHIBIT B – Email from Joy Stubbs to Luke Goodrich.......................A-4

EXHIBIT C – Joint Motion to Stay Proceedings...................................A-6

EXHIBIT D – Report and Recommendation ..........................................A-8

EXHIBIT E – Order...............................................................................A-22

# INTRODUCTION

Pursuant to Federal Rules of Appellate Procedure 27 and 2, Plaintiff-Appellant Bruce Rich respectfully moves this Court for an order of summary reversal.

This appeal centers on a single question: whether the Florida Department of Corrections (DOC) can prove that denying a kosher diet to Jewish prison inmates is the least restrictive means of furthering a compelling governmental interest. Throughout two and a half years of litigation, DOC has maintained that denying a kosher diet is essential to controlling costs and maintaining security. But on February 19, 2013, DOC announced that it has changed its mind: It no longer believes that providing a kosher diet will compromise its interests, and it intends to provide a kosher diet to some inmates in the indefinite future.

This eleventh-hour announcement fatally undermines the legal basis of the district court's decision and DOC's only legal defense. Simply put: DOC cannot demonstrate a compelling interest in *not* doing something it now claims it will do. Because there is now "no substantial question as to the outcome of the case," summary reversal is required. *Groendyke Transport, Inc.* v. *Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).

1

DOC may attempt to argue that its last-minute maneuvering renders this appeal moot. But this argument fails for three reasons. First, DOC has not yet changed its dietary policy, so Mr. Rich is still suffering from the same illegal conduct he challenged almost three years ago. Second, even if DOC began offering a kosher diet to Mr. Rich in the future, that would merely be "voluntary cessation"; and voluntary cessation does not moot a case unless the defendant demonstrates that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur"—something DOC cannot demonstrate here. *Harrell* v. *The Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010). Finally, even if mootness became an issue in the future, it should be addressed by the district court in the first instance after summary reversal.

## FACTUAL BACKGROUND

1. Plaintiff Bruce Rich is an Orthodox Jewish prison inmate in the custody of DOC. On August 9, 2010, Mr. Rich filed this lawsuit, alleging that DOC's denial of a kosher diet violates the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). RE 8-49.

2. On March 5, 2012, the district court granted summary judgment to DOC. RE 181. Although it agreed that the denial of a kosher diet substantially burdened Mr. Rich's religious exercise, it held that the denial of a kosher diet was the least restrictive means of furthering DOC's interests in controlling costs and maintaining prison security. RE 176-77.

3. On March 26, 2012, Plaintiff timely filed this appeal. Briefing was completed on November 21, 2012, and oral argument is set for April 18, 2013. While this case was pending on appeal, the United States Department of Justice also sued DOC over the same issue. *United States* v. *Sec'y, Fla. Dep't of Corr., et al.*, No. 1:12-cv-22958-PAS (S.D. Fla.) (complaint filed Aug. 14, 2012).

4. On appeal, Mr. Rich argues that DOC cannot prove that the denial of a kosher diet satisfies strict scrutiny, for several reasons. First, DOC failed to offer competent evidence on the cost of a kosher diet, and the available evidence shows that the cost is *de minimis*. Rich Opening Br. at 32-45. Second, DOC offered no competent evidence of any security problems attributable to a kosher diet in Florida or any other state, despite the fact that at least thirty-five states and the federal govern-

ment currently provide their inmates with a kosher diet. *Id.* at 45-55. Third, DOC failed to address fifteen different court decisions under the First Amendment and RLUIPA—including decisions from the Second, Seventh, Eighth, Ninth, and Tenth Circuits—all of which required prison systems to provide religious diets. *Id.* at 59-62

5. In its response brief, DOC relies heavily on *Baranowski* v. *Hart*, 486 F.3d 112, 125 (5th Cir. 2007), in which the Fifth Circuit upheld the denial of a kosher diet to a *pro se* inmate. DOC Response Br. at 24, 43.

6. On December 21, 2013, however, the Fifth Circuit issued its ruling in *Moussazadeh* v. *Tex. Dep't of Criminal Justice*, 703 F.3d 781 (5th Cir. 2012) (Smith, J.), in which it limited *Baranowski* to its facts and stated that it was "skeptical" that the denial of a kosher diet could satisfy strict scrutiny. *Id.* at 795. The court also emphasized that "bare assertions" about security concerns are "insufficient to establish a compelling interest" under RLUIPA. *Id.* at 794. Mr. Rich filed a 28(j) letter notifying this Court of *Moussazadeh* on January 2, 2013.

7. On January 18, 2013, DOC asked the United States District Court for the Southern District of Florida for a stay of the separate kosher litigation filed by the U.S. Department of Justice. Joint Motion to Stay

4

Proceedings, *United States* v. *Sec'y, Fla. Dep't of Corr., et al.*, No. 1:12-cv-22958-PAS (S.D. Fla. Jan. 18, 2013) (attached as Exhibit C). According to the stay motion, DOC plans to submit "a proposal for implementing an expanded religious dietary program to the United States by March 4, 2013." *Id.* at 1. DOC and the United States will "engage in further mediation" by April 9, "with the hope" of settling the case by April 19, 2013. *Id.* The district court granted the stay motion on January 23, 2013.

8. On February 19, 2013, DOC informed Mr. Rich that it has now decided to establish a kosher dietary accommodation for certain DOC inmates, possibly including Mr. Rich. *See* Exhibit A (Declaration of Luke Goodrich) at ¶ 3. DOC was unable to provide a date on which the new kosher dietary accommodation would be implemented. Instead, it stated that the program was still in the "development stage," and would "probably" be available four months from now or later. *Id.* ¶ 4. It was also uncertain whether the new kosher dietary accommodation would be available at all prison units or only some. *Id.* And DOC was unable to guarantee that Mr. Rich would be provided a kosher diet under its new scheme. *Id.*

9. DOC also informed Mr. Rich that it would likely have more details about the new kosher dietary program by "early April," at which time it plans to file a motion to dismiss this appeal as moot. As noted above, oral argument in this appeal is scheduled for April 18, 2013. *Id.* ¶ 5. DOC expressed no intent to notify this Court of any of these developments until a few days before oral argument.

## ARGUMENT

### A. The DOC's decision to adopt a kosher dietary program mandates summary reversal as a matter of law.

By changing its long-held position less than two months before oral argument, DOC has fatally undermined the only legal basis for the district court's decision—namely, that its denial of a kosher diet to Mr. Rich was necessary to further a compelling governmental interest. DOC now agrees that a kosher diet is compatible with its interests; summary reversal is therefore required.

This Court has "inherent power" to order summary reversal "on its own or a party's motion where circumstances warrant." *NLRB* v. *Amalgamated Clothing Workers of Am.*, 430 F.2d 966, 971 n. 13 (5th Cir. 1970); *see also* 16A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 3948 & n.19 (4th ed.) (summary reversal authorized under

Fed. R. App. P. 2). Summary reversal is appropriate when "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case." *Groendyke*, 406 F.2d at 1162; *see also United States* v. *Martinez*, 407 F.3d 1170, 1174 (11th Cir. 2005) (granting summary reversal against the United States) (citing *Groendyke*).

The standard for summary reversal is easily satisfied here. Throughout this litigation, DOC has offered only one defense of its conduct: that a kosher diet is fundamentally incompatible with its interests in controlling cost and maintaining security. DOC Response Br. at 16-18. But it has now reversed course and conceded that a kosher diet is both feasible and desirable. *See* Ex. A at ¶ 3. This reversal is fatal to its strict scrutiny defense. As numerous courts have held, a government cannot have a compelling interest in avoiding something it already does (or plans to do). *See, e.g.*:

- *Moussazadeh*, 703 F.3d at 795-96 ("completely denying prisoners kosher food" cannot be the "least-restrictive means of achieving cost reduction," when the prison system "has now offered kosher meals . . . for years");

- *Koger* v. *Bryan*, 523 F.3d 789, 800 (7th Cir. 2008) (denying a religious diet failed strict scrutiny, when "the prison already served two diets that would have satisfied [the inmate's] request");

7

- *Spratt* v. *R.I. Dep't Of Corr.*, 482 F.3d 33, 40 (1st Cir. 2007) ("blanket ban on all inmate preaching" failed strict scrutiny, when the prison had permitted preaching for several years);

- *Warsoldier* v. *Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (ban on long hair for male inmates failed strict scrutiny, when the prison system permitted long hair in "its own women's prisons");

- *Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*, 508 U.S. 520, 547 (1993) ("[A] law cannot be regarded as protecting an interest 'of the highest order' when it leaves appreciable damage to that supposedly vital interest unprohibited.").

In these circumstances, where "there can be no substantial question as to the outcome of the case," the appropriate course is summary reversal with instructions to enter judgment in favor of Mr. Rich. *Groendyke*, 406 F.2d at 1162; *see also Martinez*, 407 F.3d at 1174 (11th Cir. 2005) (granting summary reversal against the United States).

### B. The DOC cannot moot this appeal by announcing a kosher dietary program that it plans to introduce for some prisoners at some unknown date in the future.

DOC has told Mr. Rich that it intends to argue that its eleventh-hour maneuvering renders this case moot. Ex. A at ¶ 5. But that argument fails for three reasons.

First, DOC has not yet changed its policy, so Mr. Rich still suffers from the same denial of a kosher diet he challenged at the outset of this case. Obviously, "mootness does not occur when there has been no

change in the challenged activity." 13C Charles Alan Wright, *et al.*, Federal Practice and Procedure § 3533.7 (3d ed.). "Nor does mootness follow announcement of an intention to change or adoption of a plan to work toward lawful behavior." *Id.* Rather, a case is moot only if the government has "completely and irrevocably eradicated the effects of the alleged violation." *Harrell*, 608 F.3d at 1265 (11th Cir. 2010). That has not occurred here.

Second, even if DOC changed its policy in the future and started providing a kosher diet to Mr. Rich, that would merely constitute "voluntary cessation"; and voluntary cessation does not moot a case unless the defendant demonstrates that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Alabama* v. *U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1131 (11th Cir. 2005)). When applying this standard, "the 'timing and content' of a voluntary decision to cease a challenged activity are critical." *Id.* at 1266. Cessation that occurs "late in the game" will make a court "more skeptical of voluntary changes." *Id.* Similarly, when the government "still maintain[s] that the challenged [conduct] [i]s constitutional," voluntary cessation "w[ill] not suffice to moot the [case]." *Id.* at 1267.

Here, DOC cannot show that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 1268. As in *Harrell*, its voluntary cessation has come "late in the game"—after years of litigation and shortly before oral argument on appeal. Similarly, DOC has offered no "well-reasoned justification for the cessation," and no assurances that it will "hold steady" in its new course. *Id.* at 1266. In fact, it has done just the opposite: It refuses to admit that RLUIPA mandates a kosher diet for Mr. Rich, Ex. A at ¶¶ 4, 6-7, and it claims the absolute legal right to deny a kosher diet again in the future. *See* E-mail from Joy Stubbs, Assistant Attorney General, Counsel for DOC, to Luke Goodrich, Counsel for Mr. Rich (Feb. 22, 2013, 11:05 MST) (attached as Exhibit B) (DOC is "in no way conceding to error in the District Court's decision or any wrong doing (or obligation) on the part of the Department"). In these circumstances, DOC cannot carry its "heavy burden" of demonstrating mootness. *Harrell*, 608 F.3d at 1268.

Other cases have repeatedly confirmed that a government defendant cannot prove mootness merely by changing a challenged policy, much less by announcing its intent to change the policy in the future—

10

particularly when the government refuses to admit wrongdoing and claims the right to resume the same conduct in the future. *See, e.g.*:

- *Nat'l Ass'n of Bds. of Pharmacy* v. *Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1311-12 (11th Cir. 2011) (government's agreement to cease infringing conduct did not moot the case, where "the decision to [cease] appears to have been made solely in response to the current litigation," and the government "wished to be free" to resume its conduct in the future).

- *Sheely* v. *MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (voluntary cessation did not moot a case where (1) the challenged conduct was a "deliberate practice"; (2) the conduct ceased only in response to suit; and (3) "the defendant has [not] acknowledged liability")

- *Nat'l Adver. Co.* v. *City of Fort Lauderdale*, 934 F.2d 283, 286 (11th Cir. 1991) (amendments to city's sign code "do not render this case moot," because "[i]t remains uncertain whether the City would return the sign code to its original form if it managed to defeat jurisdiction in this case.")

- *Jager* v. *Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 833-34 (11th Cir. 1989) (government's policy change did not moot case, because cessation occurred "[u]nder the imminent threat of the [plaintiffs'] lawsuit," "the defendants never promised not to resume the prior practice," and "the defendants continue to press on appeal that the voluntarily ceased conduct should be declared constitutional").

DOC's prior conduct also demonstrates that it is willing to change its dietary policies in response to litigation, only to abandon those changes later. In 2002, DOC faced one of the first lawsuits by a Jewish inmate challenging the denial of a kosher diet under RLUIPA. *See Cotton* v. *Dep't of Corr.*, No. 1:02-cv-22760-KMM (S.D. Fla.) (complaint filed Sept.

19, 2002). In October 2003, that case settled, with DOC agreeing to provide the inmate a kosher diet. Shortly thereafter, in April 2004, DOC established the Jewish Dietary Accommodation Program, which continued for three years. Rich Opening Br. at 19.

But in 2007, when a new governor took office amid calls for budget cuts, DOC abandoned the program—despite the recommendation of its own study commission to retain it. *Id.* at 21-22. This demonstrates that, without a court order requiring a kosher diet, DOC views itself as free to cancel the kosher diet any time it is politically or fiscally convenient to do so. *See also* Ex. B ("[W]e [a]re in no way conceding . . . any wrong doing (*or obligation*) on the part of the Department.") (emphasis added). That prevents DOC from demonstrating mootness. *Cf. Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1311 (11th Cir. 2011) (government's voluntary cessation did not moot the case, because the government "made similar promises before—in executing the 1995 settlement agreement—and failed to keep them, prompting the current law suit").

Finally, even if DOC offers a kosher diet to Mr. Rich and argues mootness in the future, it is more appropriate for the district court to address mootness in first instance. As this Court explained in *Bankshot*

*Billiards, Inc.* v. *City of Ocala*, 634 F.3d 1340 (11th Cir. 2011), the legal standards governing voluntary cessation "are fact-intensive inquiries." *Id.* at 1352. When the issue is "raised for the first time on appeal," and the court has "no factual record before [it]," the appropriate course is to allow "the district court to evaluate the parties' mootness arguments." *Id.*

Here, the merits of this case are now clear: DOC has no compelling interest in denying Mr. Rich a kosher diet. Summary reversal, judgment in favor of Mr. Rich, and an injunction are therefore appropriate. If DOC ends up providing a kosher diet in the future, it can move the district court to lift the injunction or dismiss the case as moot.

*    *    *    *    *

It is not hard to see what is going on in this case. After several years of litigation, DOC sees the handwriting on the wall. It is now scrambling to do what it should have done years ago: implement a kosher dietary program for all observant Jewish inmates. But this last-minute policy change is obviously designed to avoid an adverse ruling on the merits, so that DOC will remain free to cancel the kosher diet in the future—just as it did with the Jewish Dietary Accommodation Program

13

six years ago. Far from mooting this case, however, DOC's last-minute maneuvering simply removes all doubt about how this case must be resolved: Mr. Rich is entitled to judgment on the merits.

## CONCLUSION

For the foregoing reasons, the decision of the district court should be summarily reversed, and the case should be remanded with instructions to enter judgment in favor of Mr. Rich.

Respectfully submitted.

<u>s/ Luke W. Goodrich</u>

Luke W. Goodrich
Eric C. Rassbach
  *THE BECKET FUND FOR*
    *RELIGIOUS LIBERTY*
  *3000 K St., NW, Suite 220*
  *Washington, DC  20007*
  *T (202) 955-0095*
  *F (202) 955-0090*

*Counsel for Bruce Rich*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on February 22, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

February 22, 2013                                    s/ Luke W. Goodrich
                                                     Luke W. Goodrich
                                                     *Counsel for Bruce Rich*

# EXHIBIT A

No. 12-11735-D

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

BRUCE RICH,

*Plaintiff–Appellant,*

v.

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, ET AL.,

*Defendants–Appellees.*

---

On Appeal from the United States District Court
for the Northern District of Florida, Gainesville Division
No. 1:10-CV-00157-MP-GRJ – Hon. Maurice M. Paul

---

# DECLARATION OF LUKE W. GOODRICH

---

Luke W. Goodrich
Eric C. Rassbach
*THE BECKET FUND FOR
RELIGIOUS LIBERTY
3000 K St., NW, Suite 220
Washington, DC 20007
T (202) 955-0095
F (202) 955-0090*

*Counsel for Bruce Rich*

A-1

I, Luke W. Goodrich, declare and state:

1. My name is Luke W. Goodrich. I am over the age of 18 and have personal knowledge of all of the contents of this declaration.

2. On February 19, 2013, I and my co-counsel Eric Rassbach spoke with Assistant Attorney Generals Joy Stubbs and Susan Adams Maher, counsel for Defendants, about the status of this appeal.

3. During that conference, Ms. Stubbs and Ms. Maher represented that the Florida Department of Corrections (DOC) has decided to establish a kosher dietary accommodation for certain DOC inmates, possibly including Plaintiff Bruce Rich.

4. Ms. Stubbs and Ms. Maher were unable to provide a date on which the new kosher dietary accommodation would be implemented. They said the new program was still in the "development stage" and would "probably" be available four months from now or later. They were also uncertain whether the new kosher dietary accommodation would be available at all prison units or only a portion thereof. And they were unable to guarantee that Mr. Rich would be included in the program.

5. Ms. Stubbs and Ms. Maher also stated that they would likely have more details about the new kosher dietary accommodation by "early

April," at which time they said they planned to file a motion to dismiss this appeal as moot.

6. When asked whether the DOC would provide a kosher dietary accommodation to Mr. Rich in the interim, while the new program is being designed and implemented, Ms. Stubbs and Ms. Maher said DOC would not.

7. Ms. Stubbs also sent Mr. Rich's counsel an email on February 22, 2013, stating that by announcing its intent to provide a kosher diet, DOC was "in no way conceding to error in the District Court's decision or any wrong doing (or obligation) on the part of the Department." That email is included after this Declaration as Exhibit B.

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed this 22nd day of February, 2013.

By:   s/ Luke W. Goodrich

Luke W. Goodrich
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
3000 K St., NW, Suite 220
Washington, DC  20007
T (202) 955-0095
F (202) 955-0090

Counsel for Bruce Rich

# EXHIBIT B

file:///C:/Documents and Settings/mperalta/Local Settings/Temporary Inter...

USCA11 Case: 12-11735    Document: 172    Date Filed: 02/22/2013    Page: 28 of 49

**From:**         Joy Stubbs [Joy.Stubbs@myfloridalegal.com]
**Sent:**         Friday, February 22, 2013 11:05 AM
**To:**           Luke Goodrich
**Cc:**           Eric Rassbach; susan maher
**Subject:**       Re: motion


Dear Mr. Goodrich,

We have considered your request for a position on the motion for summary reversal you anticipate filing today and our position is that Appellees oppose this request. When we advised that the Department would be providing another diet to address religious considerations, we were in no way conceding to error in the District Court's decision or any wrong doing (or obligation) on the part of the Department. The fact that the Department is planning to go in a new direction in addition to the alternative entrée which has the effect of mooting Mr. Rich's claim, is not a circumstance which is disposed of by summary reversal.

Thanks,
Joy

Joy A. Stubbs
Assistant Attorney General
PL-01 The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 488-4872 FAX
joy.stubbs@myfloridalegal.com

Luke Goodrich ---02/22/2013 12:48:20 PM---Joy, As I mentioned on the phone, we will be filing a motion for summary reversal today. I won't be

From: Luke Goodrich <lgoodrich@becketfund.org>
To: 'Joy Stubbs' <Joy.Stubbs@myfloridalegal.com>
Cc: Eric Rassbach <erassbach@becketfund.org>
Date: 02/22/2013 12:48 PM
Subject: motion

_____



Joy,

As I mentioned on the phone, we will be filing a motion for summary reversal today. I won't be providing a draft of the motion, but I wanted to let you know in advance as a courtesy, although advance notice is not required by Eleventh Circuit rules. If you and Susan change your mind and want to agree to summary reversal, please let me know.

Best,

Luke Goodrich
Deputy General Counsel

A-4

file:///C:/Documents and Settings/mperalta/Local Settings/Temporary Inter...

USCA11 Case: 12-11735    Document: 172    Date Filed: 02/22/2013    Page: 29 of 49

The Becket Fund for Religious Liberty
3000 K Street NW, Suite 220
Washington, DC 20007-5123
T (202) 349-7216
F (202) 955-0090
http://www.becketfund.org

*NOTICE: This e-mail is from a law firm, The Becket Fund for Religious Liberty, and is intended solely for the use of the person(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of The Becket Fund, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to The Becket Fund in reply that you expect or want it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of The Becket Fund, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.*

A-5

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff; | No. 1:12-cv-22958-PAS |
| v. | |
| SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | The Honorable Patricia A. Seitz |

## JOINT MOTION TO STAY PROCEEDINGS
## AND TO EXTEND THE DEADLINES SET OUT
## IN THE CASE MANAGEMENT REPORT

The United States and the Florida Department of Corrections, *et al*. ("FDOC")

respectfully request that the Court stay proceedings in this case until April 19, 2013, to permit

the parties to continue to engage in mediation and to extend the deadlines set out in the case

management report by 90 days.

FDOC commits to providing a proposal for implementing an expanded religious dietary

program to the United States by March 4, 2013.  The parties have agreed to engage in further

mediation by April 9, 2013, with the hope of resolving this case by April 19, 2013.  If the parties

have not reached an agreement by the date the stay expires, the United States' currently pending

discovery requests will be due on May 7, 2013.

The parties further request that the Court extend the deadlines in the scheduling order by

90 days to facilitate the parties' negotiations.  Accordingly, the amended deadlines would be as

follows:

A-6

|  | **Existing Deadline** | **Proposed Deadline** |
|---|---|---|
| Deadline for completing discovery | September 30, 2013 | December 30, 2013 |
| Deadline for filing dispositive motions | October 31, 2013 | January 29, 2014 |
| Joint scheduling report for trial due | February 21, 2014 | May 22, 2014 |
| Pretrial conference before Judge Seitz | March 12, 2014 9:00 a.m. | June 10, 2014 |
| Calendar call with Judge Seitz | March 19, 2014 1:15 p.m. | June 17, 2014 |
| Trial begins | March 24, 2014 | June 23, 2014 |

Dated:  January 18, 2013


Respectfully submitted,


  s/ Susan A. Maher_____
SUSAN A. MAHER                                      TIMOTHY D. MYGATT
Chief Assistant Attorney General          Special Counsel
Office of the Attorney General
The Capitol PL01
Tallahassee, FL  32399                                  s/ Michael J. Songer_____
Susan.Maher@myfloridalegal.com          MICHAEL J. SONGER
                                                                    DEENA FOX
                                                                    Attorneys
                                                                    United States Department of Justice
                                                                    Civil Rights Division
                                                                    950 Pennsylvania Avenue, N.W.
                                                                    Washington, DC  20530
                                                                    (202) 514-6255
                                                                    michael.songer@usdoj.gov

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BRUCE RICH,

      Plaintiff,

v.                                     CASE NO. 1:10-cv-00157-MP-GRJ

EDWIN G. BUSS, et al,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion For Summary Judgment (Doc. 38).  Defendant Hicks, who was served after the first motion for summary judgment was filed, has also filed a Motion for Summary Judgment (Doc. 42) expressly adopting and incorporating the initial motion.  Plaintiff has filed a response in opposition. (Doc. 49.)  Accordingly, this matter is ripe for review.  For the reasons discussed below, the motions for summary judgment (Docs. 38, 42) are due to be **GRANTED.**

## I.  ALLEGATIONS OF THE COMPLAINT

Plaintiff, a state prisoner, proceeding *pro se* brought this suit pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq., and 42 U.S.C. § 1983.  (Doc. 1.) Plaintiff is an Orthodox Jew housed at Union Correctional Institution in Union County, Florida.  As an Orthodox Jew, he sincerely

*Case No.: 1:10-cv-157-MP-GRJ*

believes that he must keep a kosher diet as mandated by the Torah.  (*Id.* at 8, 10.)[1]

This requires that Plaintiff eat food that is derived from a religiously acceptable source, prepared and served in a religiously acceptable way, and meat dairy products may not be mixed.  Kosher food must not come into contact with non-kosher food.  (*Id.* at 9-10.)

Plaintiff contends that corrections officials are violating his First Amendment and federal statutory rights to practice his religion by not providing him with strictly kosher food.  (*Id.* at 13.)  Plaintiff also contends that "the failure to provide a Kosher diet of well-balanced meals containing sufficient nutritional value to preserve health violates the Eighth Amendment."  (*Id.* at 12.)  Plaintiff states that he is prevented "from eating normally" and is forced to purchase limited-choice kosher items from the inmate canteen.  (*Id.* at 6.)  Plaintiff admits that it would cost the Florida Department Corrections ("DOC") more to provide him with a kosher diet than the standard cost for feeding an inmate, but Plaintiff rejects cost as justification for denying him a kosher diet.  (*Id.* at 12, 15.)

Plaintiff suggests that the DOC utilize kitchen areas used for the department's discontinued Jewish Dietary Accommodation Program (JDAP) to prepare kosher food and then transport it to inmates, or that the department permit him to purchase packaged, shelf-stable kosher meals at his own expense.  (*Id.* at 8-9.)

Plaintiff names as defendants in his suit the secretary of the DOC as well as seven other prison officials.  For relief, Plaintiff seeks an injunction requiring Defendants

---

[1] Page numbers for Doc. 1 refer to the CM/ECF imprinted page numbers (1-44), as Plaintiff's handwritten page numbers at the bottom of his complaint are not in sequence.

Case 1:10-cv-00157-MP-GRJ   Document 52   Filed 01/12/12   Page 3 of 14
USCA11 Case: 12-11735   Document: 172   Date Filed: 02/22/2013   Page: 36 of 49

*Page 3 of  14*

to "provide him with a nutritionally balanced and adequate Kosher diet" as well as monetary damages from each of the Defendants.  (*Id.* at 15-16.)

## II.  <u>STANDARD OF REVIEW</u>

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.   *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

## III.  <u>DEFENDANTS' EVIDENCE</u>

Defendants' submit in their statement of material undisputed facts that: (1) Plaintiff can choose from an alternative entree program which includes dairy and eggs

but not meat or a vegan program where all animal products are avoided; (2) it would be cost-prohibitive for the DOC to provide kosher meals to inmates; (3) the implementation of a kosher meal program would present "serious security issues" including the perception of preferential treatment, retaliation, increased gang activity, and increased staffing requirements for separate kosher food preparation areas; (4) the DOC's existing food service policies are rationally related to legitimate penological interests; and (5) the existing food service policies serve compelling governmental interests and are the least restrictive means to serve those interests. (Doc. 38, pp. 18-19.)

Defendants have filed the affidavit of Kathleen Fuhrman, Public Health Nutrition Manager for the DOC. Ms. Fuhrman states that it would be "cost prohibitive" to supply Plaintiff and any other inmates kosher meals. Shelf stable kosher entrees cost between $2.52 to $2.95; frozen kosher entrees cost "much more." Additional food items would be needed to ensure nutritional adequacy, bringing the raw food cost for kosher entrees to $4.49 to $5.71 per day. An additional $.81 per day would be incurred due to the need for disposable containers and utensils. Ms. Fuhrman estimates that the yearly cost to provide an inmate kosher meals would be $1,934.50 to $2,379.80, compared to $584.00 per year for an inmate receiving regular meals. (Doc. 38, Exh. A.) If frozen kosher entrees were used, the cost would be higher. (*Id.* at 3.)

As of July 18, 2011, 402 prisoners indicated they are Seventh Day Adventists, 3,745 are Muslim, and 2,136 indicated they are of the Jewish faith. If these 6,283 additional inmates–who identify with religious groups that have previously maintained that kosher diets are necessary–were to be provided kosher meals, the additional cost

Case 1:10-cv-00157-MP-GRJ   Document 52   Filed 01/12/12   Page 5 of 14
USCA11 Case: 12-11735   Document: 172   Date Filed: 02/22/2013   Page: 38 of 49

*Page 5 of  14*

to the DOC would be $12,154,463.35 to $14,952,283.40 per year.  Ms. Fuhrman states the Plaintiff has two food service options available to him if he wishes to avoid non-kosher meat or animal products: the alternate entree meal program, which is meat-free but allows dairy and eggs; or the vegan meal program, which would enable him to avoid all non-kosher animal products.  (*Id.* at 4.)

Defendants also filed an affidavit of James Upchurch, Chief of the Bureau of Security Operations.  (Doc. 38, Exh. B.)  Mr. Upchurch states that the DOC provides vegan and alternate entree options for inmates whose religious beliefs would be accommodated by such diets, and that pork and pork products have been entirely eliminated from DOC food service programs.  He states that "serious security issues" would arise if a kosher diet were offered such as the one sought by Plaintiff, and that some of these issues manifested themselves during the DOC's Jewish Dietary Accommodation Program (JDAP) in 2007.  The primary security issue, said Mr. Upchurch, is that providing such a special diet would be seen by other inmates as preferential treatment which would negatively impact inmate morale and the orderly operation of the institutional environment.  Additionally, inmates would likely claim belief in other religious groups to obtain the kosher diet, especially if it is believed to be of better quality and/or provides more food.  (*Id.* at 2.)  These types of efforts by inmates were "reported extensively" during the operation of JDAP.  Mr. Upchurch states that if the DOC attempted to determine religious entitlement to a special menu or enforce any criteria related to such a determination, "discord and unrest" would arise in the inmate population, and an increase in confrontational incidents involving staff and inmates is of

Case 1:10-cv-00157-MP-GRJ   Document 52   Filed 01/12/12   Page 6 of 14
USCA11 Case: 12-11735   Document: 172   Date Filed: 02/22/2013   Page: 39 of 49

*Page 6 of  14*

significant concern.  Security staff attention would be diverted from primary security functions to addressing issues arising from such a dietary program.

Another security concern experienced during JDAP –  and which would likely continue if a few specialized kitchens were used –  is that inmates, including gang members, would attempt to manipulate the system to gain assignment to special institutions for gang and other associational purposes.  Furthermore, the logistical issues related to Plaintiff's suggestion that food be prepared in special kitchens and transported to other institutions would require vehicles, food carriers, and staff, straining the DOC's scarce resources.  (*Id.* at 3.)  Mr. Upchurch states that if members of the general inmate population believed that the cost of the kosher diet was negatively impacting the quality of their food, it would likely lead to retaliation against the kosher inmates or otherwise disrupt the institution.  Finally, maintaining and securing a kosher area of the general kitchen would divert the already limited kitchen security staff from their responsibilities in operating a large kitchen with a large number of inmate workers. (*Id.* at 4.)

Defendants also submitted DOC procedure number 604.301, which describes its food service standards.  The document describes the alternate and vegan meal options available to inmates; describes authorized religious holiday menus; and indicates that all vegetables will be prepared without meat, meat fat, meat-based broth, or butter. (Doc. 38, Exh. C.)

Case 1:10-cv-00157-MP-GRJ   Document 52   Filed 01/12/12   Page 7 of 14
USCA11 Case: 12-11735   Document: 172   Date Filed: 02/22/2013   Page: 40 of 49

Page 7 of 14

## IV.  **PLAINTIFF'S EVIDENCE**

Plaintiff has presented three items of evidence in response to Defendants'

motions for summary judgement.  First, Plaintiff has attached his own unsworn affidavit

wherein he describes his religious upbringing and education; and his adherence to the

laws and traditions of his faith.  Plaintiff asserts that he only eats kosher and as such

eats what he can purchase from the limited kosher offerings available at the inmate

canteen, to the detriment of his nutritional needs.  Plaintiff states that he was placed in

confinement twice in the previous 22 months and during that time went without food for

over a month and that despite multiple requests, corrections officials would not send

him uncooked, raw vegetables and fruits.  Plaintiff states that his soul would be

negatively affected if he ingested anything non-kosher.  Plaintiff asserts that he has

offered to pay for his kosher meals but this was denied; the Aleph Institute offered to

send pre-packaged kosher meals for him but this was also denied.  Plaintiff states that

the vegan and alternate meals offered by the DOC are not kosher due to the way they

are prepared.  Plaintiff asserts that eating only kosher foods is a non-negotiable tenet of

Judaism.  (Doc. 49, Exh. A.)

Plaintiff also submitted a November 11, 2011 letter from Menachem Katz,

Director of Outreach Programs for the Aleph Institute, to Plaintiff.  Mr. Katz states that

he recently met with the new secretary in Tallahassee (presumably the secretary of the

DOC) and that they are on track to open a kosher kitchen "down south."  Mr. Katz

stated that kosher meals have been served at SFRC South Unit for 15 months "with

none of the issues the government is claiming in your case."  Mr. Katz stated that there

Case 1:10-cv-00157-MP-GRJ   Document 52   Filed 01/12/12   Page 8 of 14
USCA11 Case: 12-11735   Document: 172   Date Filed: 02/22/2013   Page: 41 of 49

Page 8 of  14

have been no security concerns and rather than a "run on the program," many inmates had actually left the program.  Mr. Katz requested that when a kosher kitchen was opened and inmates were able to transfer to that facility, Plaintiff would drop his lawsuit. (Doc. 49, Exh. B.)

Finally, Plaintiff offers a "Statement of Interest of the United States" filed in *Willis v. Commissioner, Indiana Dep't of Corrections,* Case No. 1:09-cv-815-JMS-DML (S.D. Ind. January 14, 2011).  The Government urged the court in that case to refrain from issuing a stay of an injunction preventing the Indiana Department of Corrections from adhering to its policies regarding kosher meals pending an appeal.  (*Id.*)

## V. <u>DISCUSSION</u>

Plaintiff contends that Defendants, by not providing him with a kosher diet, have violated RLUIPA, the First Amendment, and the Eighth Amendment.

### A.  RLUIPA dietary claim

To establish a *prima facie* case under RLUIPA, "a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened."  *Smith v. Allen,* 502 F.3d 1255, 1276 (11th Cir. 2007); 42 U.S.C. § 2000cc-1(a).  If a plaintiff establishes a *prima facie* case, the burden shifts to the government to "demonstrate that the challenged government action 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering that compelling governmental interest.'"  *Smith*, 502 F.3d at 1276 (quoting 42 U.S.C. § § 2000cc-1(a), 2000cc-2(b)).  But "[c]ontext matters in the application of that standard," and it should be applied with "due deference to the experience and expertise of prison

and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (internal citations omitted).

Defendants have not disputed that the kosher diet Plaintiff seeks is a sincerely held tenet of his religion.  Nor have they disputed that their failure to provide a kosher diet to him substantially burdens his religious practice.  Accordingly, the burden shifts to Defendants to demonstrate a compelling state interest and that the decision not to provide Plaintiff a kosher diet is the least restrictive means of serving that compelling interest.

In *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007), *cert. denied,* 128 S. Ct. 707 (2007), and *Linehan v. Crosby,* 2008 WL 3889604 (N.D. Fla. 2008), *aff'd*, 346 Fed. Appx. 471 (11th Cir. 2009), the Fifth Circuit and this Court addressed scenarios similar to the instant case.  In *Baranowski*, the court held that while a Jewish kosher diet was a valid exercise of the prisoner's religious beliefs and a failure to provide it substantially burdened his free exercise of that belief, RLUIPA was not violated because the "dietary policy of not providing kosher meals is the least restrictive means of furthering a compelling government interest." *Baranowski*, 486 F.2d at 124-25.  The court looked to affidavits provided by prison officials, who stated that providing kosher meals would be too costly, would jeopardize the nutritional meals of inmates receiving standard meals, would breed resentment among other inmates, and that other religious groups would demand similar diets.  The *Baranowski* court affirmed the trial court's grant of summary judgment to Defendants on his RLUIPA claim.

Similarly, this Court in *Linehan* granted summary judgment in favor of defendants on a RLUIPA claim where the plaintiff, a Seventh-Day Adventist, sought a kosher diet. "[T]he excessive cost, as well as administrative and logistic difficulties, of implementing a kosher meal plan in the Florida prison system are compelling state interests, and the current vegan and vegetarian diets are the least restrictive means of addressing this compelling interest." *Linehan,* 2008 WL 3889604 at *2. The Court noted that, according to the affidavits submitted by DOC officials (including Ms. Furhman and Mr. Upchurch, whose affidavits were submitted by Defendants in the instant case), the special treatment would cause unrest among other prisoners, resulting in significant security risks, and that the cost would be far too great. *Id.* at *1-*2.

The evidence before the Court is virtually identical. The cost and security concerns expressed by DOC officials in *Linehan* still exist. It would, according to Ms. Furhman, cost the DOC an additional $12,154,463.35 to $14,952,283.40 per year to provide kosher diets for Muslim, Jewish, and Seventh Day Adventist prisoners, who would have to be treated equally. (Doc. 38, Exh. A.) Furthermore, "serious security issues" would also be implicated if Plaintiff were provided a kosher diet, including: decreased inmate morale and orderly operation of facilities if certain inmates are seen as receiving special treatment; inmates might profess belief to a religious group to obtain a special diet; efforts by the DOC to determine religious entitlement would cause "discord and unrest" and increased confrontational incidents; security staff would be diverted from their primary functions to addressing issues related to the kosher diet; and the program could be manipulated for gang activity. Logistical issues would also

Case 1:10-cv-00157-MP-GRJ   Document 52   Filed 01/12/12   Page 11 of 14
USCA11 Case: 12-11735   Document: 172   Date Filed: 02/22/2013   Page: 44 of 49

*Page 11 of  14*

be implicated if food were to be prepared in special kitchens and transported to other institutions.  (Doc. 38, Exh. B.)

Plaintiff suggests that he should be permitted to pay for his own meals, which would then be brought into the prison system.  However, while this might alleviate some of the cost concerns for his individual meals, allowing him to receive special meals would still implicate the cost, security, and logistical concerns expressed by DOC officials in the affidavits before the Court.

Accordingly, Plaintiff has failed to come forward with evidence to prove his RLUIPA kosher diet claim.  Summary judgment should be entered in favor of Defendants.

### B.  First Amendment claim

In *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), the Supreme Court held that prisoners retain First Amendment rights, but "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Id.* at 348 (quoting *Price v. Johnston,* 334 U.S. 266, 285 (1948)).  To ensure that prison officials are afforded appropriate deference by the courts, the Court has established a "reasonableness" test that is less restrictive than the test normally applied to alleged infringements of fundamental constitutional rights.  The Court further explained:

> "'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." This approach ensures the ability of corrections officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration,' and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to "resolution by decree."

Case 1:10-cv-00157-MP-GRJ   Document 52   Filed 01/12/12   Page 12 of 14
USCA11 Case: 12-11735   Document: 172   Date Filed: 02/22/2013   Page: 45 of 49

Page 12 of 14

*Id.* at 349-50 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987) and *Procunier v. Martinez,* 416 U.S. 396, 405 (1974)) (citations and footnotes omitted).

The RLUIPA "affords confined persons greater protection of religious exercise than what the Constitution itself affords." *Smith,* 502 F.3d at 12566 (citations and quotation marks omitted).  The compelling state interest test is less favorable to defendants than the reasonableness test.  Accordingly, because Defendants have prevailed on the RLUIPA claim, it follows that they are entitled to summary judgment on Plaintiff's First Amendment claim.  Defendants have demonstrated that their failure to provide Plaintiff a kosher diet is reasonably related to legitimate penological interests and that providing the current vegan and vegetarian diets are the least restrictive means of addressing this compelling state interest.  Summary judgment, therefore, should be granted to Defendants on Plaintiff's First Amendment claim.

### C.  Eighth Amendment claim

Plaintiff claims that prison officials have violated his Eighth Amendment rights because they will not serve him a kosher diet, and as a result, he must choose from a limited selection of kosher food at the inmate canteen.  Plaintiff alleges that his diet of inmate canteen food is nutritionally inadequate.  He does not allege any specific side effects of his diet.

The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  After incarceration, "only the 'unnecessary and wanton infliction of pain' . .

Case 1:10-cv-00157-MP-GRJ   Document 52   Filed 01/12/12   Page 13 of 14
USCA11 Case: 12-11735   Document: 172   Date Filed: 02/22/2013   Page: 46 of 49

Page 13 of  14

constitutes cruel and unusual punishment forbidden by the Eighth Amendment."

*Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97,

104 (1976) (citations omitted)).  Where, as here, the claim is based upon the

deprivation of food, such a claim can only constitute cruel and unusual punishment if

the prisoner is denied the "minimal civilized measure of life's necessities." *Wilson v.*

*Seiter*, 501 U.S. 294, 303 (1991).  It is well-established that inmates must be provided

nutritionally adequate food, "prepared and served under conditions which do not

present an immediate danger to the health and well being of the inmates who consume

it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d

559, 571 (10th Cir.1980), *cert. denied*, 450 U.S. 1041 (1981)).

    A viable Eight Amendment claim has both an objective and subjective

component. Under the objective component the prisoner must not only show that a

condition "pose[s] an unreasonable risk of serious damage to his future health or

safety" but also that the "risk of which he complains is not one that today's society

chooses to tolerate." *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004). In

other words, the challenged condition must be "extreme" and "deprive ... [the prisoner]

of the minimal civilized measures of life's necessities." *Id.*  The subjective component

requires "a subjective intent by the public officials involved to use the sufficiently serious

deprivation in order to punish." *Taylor v. Adams*, 221 F.3d 154, 1258 (11th Cir. 2000).

    As discussed in detail above, the DOC is not required by the RLUIPA or the First

Amendment to provide Plaintiff with a kosher diet.  Plaintiff does not dispute that the

alternative entree or vegan meal options are available to him or that the food served in

those programs is nutritionally adequate.  Rather, Plaintiff has chosen not to eat the

meals made available to him and instead eats from the inmate canteen where, though

limited, kosher options are available.  The DOC's failure to provide kosher meals for

budgetary, security, and logistical reasons does not constitute denial of the "minimal

civilized measure of life's necessities." *Wilson*, 501 U.S. at 303; *Chandler,* 379 F.3d at

1289-90. Because there is no dispute that the DOC provides alternative meals – and

Plaintiff has not offered any evidence that those alternative meals are nutritionally

inadequate – summary judgment is due be granted in favor of Defendants on Plaintiff's

Eighth Amendment claim.

## VI. <u>RECOMMENDATION</u>

Having carefully reviewed the record, this Court concludes that Defendants are

entitled to summary judgment in their favor.  It is respectfully **RECOMMENDED** that the

Defendants' motions for summary judgment (Docs. 38 and 42) should be **GRANTED**

and the Clerk should be directed to enter final judgment in favor of Defendants.

IN CHAMBERS  this 12th day of January 2012.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within
14 days after being served with a copy of this report and recommendation.  A party may respond
to another party's objections within 14 days after being served with a copy thereof.  Failure to file
specific objections limits the scope of review of proposed factual findings and recommendations.**

*Case No.: 1:10-cv-157-MP-GRJ*

# EXHIBIT E

Case 1:10-cv-00157-MP-GRJ   Document 57   Filed 03/05/12   Page 1 of 1
USCA11 Case: 12-11735   Document: 172   Date Filed: 02/22/2013   Page: 49 of 49

*Page 1 of 1*

### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

BRUCE RICH,

      Plaintiff,

v.                                    CASE NO. 1:10cv157-MP-GRJ

EDWIN G. BUSS, et al.,

      Defendants.

_____/

### O R D E R

      This cause comes on for consideration upon the magistrate judge's Report and Recommendation dated January 12, 2012. (Doc. 52). The parties have been furnished a copy of the Report and Recommendation and have been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1). I have made a *de novo* determination of any timely filed objections.

      Having considered the Report and Recommendation, and any objections thereto timely filed, I have determined that the Report and Recommendation should be adopted.

      Accordingly, it is now ORDERED as follows:

      1.    The magistrate judge's Report and Recommendation is adopted and incorporated by reference in this order.

      2.    Defendants' motions for summary judgment (docs. 38 and 42) are GRANTED and the Clerk is directed to enter final judgment in favor of defendants.

      **DONE and ORDERED** this 4th day of March, 2012.

                    s/ *M. Casey Rodgers*
                    **M. CASEY RODGERS**
                    **CHIEF UNITED STATES DISTRICT JUDGE**